1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8

9

10

11   DAVID L. BRENTLINGER,                 No. C 09-02635 CW (PR)

12           Petitioner,                   ORDER DENYING PETITION FOR WRIT
                                           OF HABEAS CORPUS; DENYING
13       v.                                CERTIFICATE OF APPEALABILITY;
                                           DENYING MOTION FOR APPOINTMENT
14   JAMES WALKER, Warden,                 OF COUNSEL

15           Respondent.
     _____/

16

17       Petitioner David Brentlinger is a prisoner of the State of

18   California, incarcerated at the California Medical Facility.  On

19   July 8, 2009, Petitioner filed a pro se amended petition[1] for a

20   writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the

21   validity of his 2006 state conviction.  Respondent filed an answer,

22   and Petitioner filed a traverse.  Having considered all of the

23   papers filed by the parties, the Court DENIES the petition.

24

25   _____

26       [1]  On June 15, 2009, Petitioner filed an original petition for
     writ of habeas corpus.  Petitioner's July 8, 2009 amended petition was
27   originally filed in error as a separate action in C 09-3089 CW (PR).
     On August 24, 2009, the Court ordered that action closed and ordered
28   the Clerk of Court to re-file the July 8, 2009 petition as the amended
     petition in this action C 09-2635 CW (PR).  On February 23, 2010, the
     Court directed Respondent to file a response showing cause why
     Petitioner's amended petition should not be granted.

United States District Court
For the Northern District of California

BACKGROUND

The following is a summary of the facts taken from the December 15, 2008 state appellate court's unpublished opinion on direct appeal.  Resp. Ex. 8[2], <u>People v. Brentlinger</u>, No. H031241, 2008 WL 5207561 at *1-3 (Cal. Ct. App.).

In early October 2005, Samuel Ruby and Petitioner panhandled on the same corner in San Jose, California.  They would take turns at the corner, but Petitioner would occasionally tell Ruby to leave when it was Ruby's turn.  Ruby and Petitioner had argued over this.

On October 6, 2005, Ruby was fifty-six years old, approximately 5'6" tall, weighed about 216 pounds, and had walked with a cane for almost fifteen years.  On that day, Ruby decided to talk to Petitioner about the panhandling situation.  Ruby brought Eugene Wright with him.  Ruby intended to have a couple of drinks with Petitioner whom he considered a friend.

When Ruby and Wright arrived at Petitioner's homeless camp, Ruby was intoxicated.  He had consumed about five beers and taken several prescription medications, including Vicodin, Valium, Paxil and Trazodone.  Ruby hit Petitioner's tent with his cane in order to get his attention.  After Petitioner exited the tent, Ruby asked Petitioner if he wanted to have a few beers and discuss the panhandling situation.  Ruby did not recall what happened next, but Petitioner's girlfriend, Laurie Sheldahl, exited the tent at some point, and Petitioner became belligerent.  Petitioner started to push Ruby.  He then broke Ruby's cane and punched Ruby in his chest and ribs.  At some point, Petitioner was slugging Ruby and Ruby blacked out.  Petitioner and Ruby were wrestling, and when Ruby was

---

[2]   All references herein to exhibits are to the exhibits submitted by Respondent in support of the Answer.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

on top of Petitioner, Sheldahl got on Ruby's back, grabbed his mustache – which was about four inches long – and tore half of it off.  In response, Ruby grabbed Sheldahl's hair and pushed her away.  When Petitioner continued to hit Ruby in the chest area, Ruby took a swing at Petitioner.  Ruby might also have pushed him. While Petitioner and Ruby were wrestling on the ground, Wright became involved in the fight by trying to take Petitioner off Ruby.

Petitioner hugged Ruby when the fight ended.  Ruby then realized that he had been stabbed in the area where Petitioner had been pushing him.  Ruby did not see Petitioner with a knife.  Ruby did not know if Wright had pulled out a knife.  Ruby did not remember being stabbed.

Officer Michael O'Neil was dispatched to the hospital where Ruby was receiving treatment for his injuries.  Another officer had detained Wright, who misled the police about where the incident occurred.  Wright also told the officer that they had been the victims of a random attack.  Officer O'Neil seized a knife from Wright.  Because Officer O'Neil did not see any blood on the knife, he did not send it to the crime laboratory for testing.  Officer O'Neil noted a bite mark on Wright's cheek, but did not see any blood on him.

After he interviewed Wright, Officer O'Neil went to the homeless camp to search for a suspect named David.  He found Petitioner, who was not wearing a shirt.  Petitioner's abdomen was smeared with blood.  The police did not locate any knives during a search of Petitioner and the surrounding area.  Sheldahl was also present.  She had a slight cut and swelling on her lip.

**United States District Court**
For the Northern District of California

The parties stipulated at trial that Ruby's blood alcohol level had been .205, and that he had suffered stab wounds in his abdominal cavity and chest.  He was hospitalized for seven days.

At trial, Ruby also testified to an earlier incident that took place in August 2005 when Ruby became intoxicated and "called [ ] out" an individual named Rudy Zuniga.  At that time, Ruby told his friends that he "would fight anybody around there that would keep on taking [the panhandling] spot."  Zuniga was walking by, and Zuniga threw the first punch.  Zuniga was not injured, but Ruby received a cut on his eye, which required five stitches.  When Ruby was at the hospital, he told doctors that he had fallen, not that he had been in a fight.  Ruby did not recall whether Petitioner was present during this earlier incident, but he knew that Sheldahl was.

On August 17, 2006, following trial, a Santa Clara County jury found Petitioner guilty of assault with a deadly weapon (Cal. Penal Code § 245(a)(1)) and found true an enhancement allegation that Petitioner had personally inflicted great bodily injury (Cal. Penal Code § 12022.7(a)).  The trial court found that Petitioner had two prior strike convictions (Cal. Penal Code §667(b)-(I)) and two prior serious felony convictions (Cal. Penal Code § 667(a)).  On February 8, 2007, the trial court sentenced Petitioner to thirty-eight years to life in prison.

On October 18, 2007, Petitioner appealed his conviction to the California Court of Appeal.  On December 15, 2008, the state appellate court affirmed the judgment of conviction.  On January 28, 2009, Petitioner filed a petition for review in the California Supreme Court, which was denied on March 25, 2009.  Meanwhile,

**United States District Court**
For the Northern District of California

1    Petitioner filed a habeas petition in the California Court of

2    Appeal on May 15, 2008, which was denied on December 15, 2008.

3    Petitioner then filed a habeas petition in the California Supreme

4    Court on September 8, 2009, which was denied on February 10, 2010.[3]

5    Petitioner timely filed this federal habeas petition.

6                            LEGAL STANDARD

7        A federal court may entertain a habeas petition from a state

8    prisoner "only on the ground that he is in custody in violation of

9    the Constitution or laws or treaties of the United States."  28

10   U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death

11   Penalty Act (AEDPA), a district court may not grant a petition

12   challenging a state conviction or sentence on the basis of a claim

13   that was reviewed on the merits in state court unless the state

14   court's adjudication of the claim: "(1) resulted in a decision that

15   was contrary to, or involved an unreasonable application of,

16   clearly established federal law, as determined by the Supreme Court

17   of the United States; or (2) resulted in a decision that was based

18   on an unreasonable determination of the facts in light of the

19   evidence presented in the State court proceeding."  28 U.S.C.

20   § 2254(d).  A decision is contrary to clearly established federal

21   law if it fails to apply the correct controlling authority, or if

22   it applies the controlling authority to a case involving facts

23   materially indistinguishable from those in a controlling case, but

24   nonetheless reaches a different result.  <u>Clark v. Murphy</u>, 331 F.3d

25   1062, 1067 (9th. Cir. 2003).  A decision is an unreasonable

26

27           [3]   The California Court of Appeal's online Register of Actions
28   shows that Petitioner filed subsequent habeas petitions in that court
     on July 8, 2009 and March 23, 2010, which were denied on July 30, 2009
     and March 26, 2010, respectively.

application of federal law if the state court identifies the
correct legal principle but unreasonably applies it to the facts of
the prisoner's case.  Id.

The only definitive source of clearly established federal law
under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as
of the time of the relevant state court decision.  Williams v.
Taylor, 529 U.S. 362, 412 (2000).

To determine whether the state court's decision is contrary
to, or involved an unreasonable application of, clearly established
law, a federal court looks to the decision of the highest state
court that addressed the merits of a petitioner's claim in a
reasoned decision.  LaJoie v. Thompson, 217 F.3d 663, 669 n.7 (9th
Cir. 2000).  In the present case, the only state court to address
the merits of Petitioner's claims is the California appellate court
on direct review.

DISCUSSION

Petitioner asserts eleven claims relating to jury
instructions, the admissibility of evidence, and the competency of
trial counsel.  The claims are addressed in turn below.

I.  Self-Defense Instruction (CALCRIM No. 3470)

Petitioner claims that the trial court erred in its
instruction to the jury on self-defense.  Specifically, the trial
court instructed the jury with CALCRIM No. 3470 (Self-Defense) as
follows:

> The defendant is not guilty of assault with a
> deadly weapon or simple assault if he used
> force against the other person in lawful self-
> defense. The defendant acted in lawful self-
> defense if: [¶] One.  The defendant reasonably
> believed that he was in imminent danger of
> suffering bodily injury.  [¶] Two.  The
> defendant reasonably believed that the

immediate use of force was necessary to defend against that danger. [¶] And three. The defendant used no more force than was reasonably necessary to defend against that danger. [¶] Belief in future harm is not sufficient no matter how great or how likely the harm is believed to be. [¶] The defendant must have believed there was imminent danger of violence to himself. Defendant's belief must have been reasonable and he must have acted only because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. [¶] If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense. [¶] When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in the similar situation with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed. [¶] If you find Samuel Ruby threatened or harmed the defendant or others in the past, you may consider that information in deciding whether defendant's conduct and beliefs were reasonable. [¶] The People have the burden of proving beyond a reasonable doubt that defendant did not act in lawful self-defense. [¶] If the People have not met this burden, you must find the defendant not guilty of assault with a deadly weapon or simple assault.

Ex. 2 at 265-67.

Petitioner argues that the instruction was erroneous because there was no evidence that he knew about Ruby's prior violent conduct or that Ruby had previously threatened him. According to Petitioner, the instruction "nullified" the effect of his lack of knowledge.

A.   State Appellate Court Opinion Addressing Petitioner's Claim

The state court of appeal rejected Petitioner's claim on the basis that the instruction nowhere referred to Petitioner's knowledge of Ruby's past conduct. People v. Brentlinger, 2008 WL

5207561 at *9.  Rather, as indicated by the portion of the instruction that refers to Ruby, the jury could simply consider whether Ruby had "threatened or harmed . . . others in the past" in deciding whether Petitioner's conduct and beliefs were reasonable.  Id.

B.   Analysis of Petitioner's Claim Under AEDPA

A challenge to a jury instruction solely as an error under state law does not state a claim cognizable in federal habeas corpus proceedings.  See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.  Id. at 72.  The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.

Petitioner does not show how CALCRIM No. 3470 so infected his trial.  As the state appellate court noted, the instruction did not require that Petitioner know of Ruby's past conduct.  Rather the instruction allowed the jurors to infer that Ruby may have acted aggressively with Petitioner based on Ruby's past conduct.  Indeed, eliminating any requirement that Petitioner know of the conduct made it easier for the jury to find that Petitioner acted in self-defense and therefore benefitted Petitioner.

Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable application of, established federal authority.

United States District Court
For the Northern District of California

II.   Jury Instruction Regarding Petitioner's Prior Acts of Violence

Petitioner claims that the trial court improperly instructed the jury as to his prior offenses.  Specifically, after the defense introduced evidence of Ruby's character for violence, the prosecution introduced evidence at trial of Petitioner's two prior convictions for assault with a deadly weapon and one prior conviction for battery with serious bodily injury.  Ex. 2 at 240-41, 249-50.  The trial court then instructed the jury pursuant to a modified version of CALCRIM No. 852 (Evidence of Uncharged Domestic Violence) as follows:

> The People presented evidence that the defendant committed prior acts of violence that were not charged in this case.  You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the prior acts. [¶] Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it's more likely than not the fact is true.  [¶] If the People have not met this burden of proof, you must disregard this evidence entirely.  If you decide that the defendant committed the prior acts of violence, you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to acts of violence, and based on that decision, also conclude that the defendant was likely to commit and did commit assault with a deadly weapon as charged here.  [¶] If you conclude that defendant committed the prior acts of violence, that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient by itself to prove that the defendant is guilty of assault with a deadly weapon.  The People must still prove each element of every charge beyond a reasonable doubt.

Ex. 2 at 261-62.  Petitioner argues that the instruction was erroneous in that it allowed the jury to use character evidence to

**United States District Court**
For the Northern District of California

conclude that Petitioner was disposed or inclined to acts of violence and thus likely to have committed the assault against Ruby.

> A. State Appellate Court Opinion Addressing Petitioner's Claim

The state court of appeal relied on state law, specifically <u>People v. Reliford</u>, 29 Cal. 4th 1007 (2003), in finding that the challenged jury instruction met constitutional requirements. <u>People v. Brentlinger</u>, 2008 WL 5207561 at *11. While <u>Reliford</u> addressed CALJIC No. 2.50.01,[4] the state court found no significant difference between the language of 2.50.01 and the modified version of CALCRIM No. 852 given at Petitioner's trial. <u>Id.</u>

---

[4] CALJIC 2.50.01 permits an inference of guilt on a charged sexual offense based on evidence of a past sexual offense and reads in relevant part:

> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that [he] [she] was likely to commit and did commit the crime [or crimes] of which [he] [she] is accused.

> However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove beyond a reasonable doubt that [he] [she] committed the charged crime[s]. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

B.  Analysis of Petitioner's Claim Under AEDPA

Jury instructions on prior uncharged offenses may violate due process where they lessen the prosecution's burden of proof by allowing the "jury to find that [petitioner] committed the uncharged [offenses] by a preponderance of the evidence and thus to infer that he had committed the <u>charged</u> acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence." <u>Gibson v. Ortiz</u>, 387 F.3d 812, 822 (9th Cir. 2004) (emphasis in original) <u>overruled in part on other grounds by</u> <u>Byrd v. Lewis</u>, 566 F.3d 855, 866 (9th Cir. 2009).  A jury may, however, infer that a defendant committed the charged crime based on previous, uncharged crimes, as long as those previous offenses were proven beyond a reasonable doubt.  <u>Gibson</u>, 387 F.2d at 822.

In the instant case, Petitioner was found guilty and convicted of the prior offenses.  Accordingly, there is no concern that his 2006 jury used a preponderance of evidence standard, because the prior conduct had been proved beyond a reasonable doubt.  <u>See</u> <u>Mendez v. Knowles</u>, 556 F.3d 757, 768-70 (9th Cir. 2009) (no likelihood that jury applied lower standard of proof because evidence of prior offenses was prior convictions upon guilty pleas for those offenses).

To the extent Petitioner is challenging California's use of propensity evidence, the claim also fails.  The Supreme Court has left open the question whether a state law allowing admission of propensity evidence violates due process.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 75 n.5 (1991) ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of

11

United States District Court
For the Northern District of California

'prior crimes' evidence to show propensity to commit a charged crime."). Based on the Supreme Court's express reservation of this issue as an "open question," the Ninth Circuit has held that a due process right barring the admission of propensity evidence is not "clearly established" within the meaning of 28 U.S.C. § 2254(d). Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006); accord Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008) (reaffirming Alberni).

Accordingly, the state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal authority.

III.   Instruction on Third Party Culpability

Petitioner claims that the trial court erred when it refused to instruct the jury on third party culpability. While the amended petition does not state the basis for such an instruction, it appears from Petitioner's state appellate and state habeas briefing (Exs. 3, 9) and from the state appellate court opinion that the proposed instruction was intended to focus the jury's attention on Wright's alleged involvement in the injuries. See People v. Brentlinger, 2008 WL 5207561 at *12. Petitioner argued that Wright was the only individual found with a knife and that the police never tested the knife for the presence of blood. Id.

Specifically, the defense submitted three proposed instructions on third party culpability at trial. Ex. 1 at 199-202. The trial court denied all three, finding that: (1) the third party culpability instructions were duplicative and cumulative of other instructions; (2) the evidence of third party culpability was

12

so thin that it did not justify pinpointing the issue; and (3) the fact that a knife was not found on Petitioner did not support a theory of third party culpability, because it was not clear how long after the incident Petitioner was searched. Ex. 2 at 243-45.

A.   State Appellate Court Opinion Addressing Petitioner's
     Claim

The state appellate court affirmed the trial court's ruling denying the proposed instructions on three grounds. <u>People v. Brentlinger</u>, 2008 WL 5207561 at *13. First, the court found insufficient evidence of third party culpability. <u>Id.</u> Specifically, while Wright was found with a knife at the hospital, there was no evidence that Wright ever touched Ruby's chest or abdomen. <u>Id.</u> Further, the fact that Petitioner did not have a knife when police searched him "did not support a theory of third party culpability, because so much time had passed after the incident." <u>Id.</u>

Second, the appellate court found that the trial court accurately instructed the jury on the prosecution's burden of proof beyond a reasonable doubt as to each element of assault with a deadly weapon. <u>Id.</u> This included the requirement that Petitioner --as opposed to someone else--had to be found to have committed the charged crime. <u>Id.</u>

Finally, the appellate court found that, even assuming the trial court's ruling was erroneous, any error was harmless. <u>Id.</u> at *14. Specifically, in addition to the jury's instructions on the prosecution's burden of proof, the jury knew from defense counsel's argument the defense theory that someone else had committed the assault. <u>Id.</u> Accordingly, the state court found no reasonable

probability the jury would have reached a different conclusion even if given one of the proposed instructions.  Id.

B.  Analysis of Petitioner's Claim Under AEDPA

A state trial court's failure to give an instruction does not alone raise a ground cognizable in federal habeas corpus proceedings.  Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  The omission of an instruction is less likely to be prejudicial than a misstatement of the law.  Walker v. Endell, 850 F.2d 470, 475 (9th Cir. 1987).  A habeas petitioner whose claim involves failure to give a particular instruction, as opposed to a claim that involves a misstatement of the law in an instruction, bears an "especially heavy burden."  Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997) (quoting Henderson v. Kibbe, 431 U.S. 145, 155 (1977)).

Due process does not require that an instruction be given unless the evidence supports it.  See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  Further, defendant is not entitled to have jury instructions raised in his or her precise terms where the given instructions adequately embody the defense theory.  United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir. 1996); United States v. Tsinnijinnie, 601 F.2d 1035, 1040 (9th Cir. 1979).  Whether a constitutional violation has occurred will depend upon the evidence in the case and the overall instructions given to the jury.  See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995).

Under these legal principles, Petitioner's claim fails.  After a thorough review of the record, this Court finds that the state

14

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

appellate court reasonably rejected the claim on the basis of insufficient evidence of third party culpability.  Petitioner's claim that Wright was responsible for the assault was not supported by the evidence.  Menendez, 422 F.3d at 1029.  To the contrary, the evidence showed that Petitioner was the only person who hit Ruby's chest and abdomen.  Ex. 2 at 89-93, 176-78.

Furthermore, the state trial court gave the jury several instructions regarding the required elements of the assault and the prosecution's burden of proof.  Ex. 1 at 183, 185, 190-92.  These instructions guided the jury to find beyond a reasonable doubt that Petitioner--and not somebody else--had committed the charged crime. Accordingly, viewed in the context of the record as a whole, the instructions given adequately embodied the defense's theory. Duckett, 67 F.3d at 745.  Moreover, given the instructions as a whole, if error occurred, it was harmless.  See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

The state court's denial of this claim was not contrary to, or an unreasonable application of, clearly established federal authority.

IV.  Admissibility of Wright's Statement to the Police

Petitioner claims that the trial court erred in excluding a statement that Wright made to the police that Ruby was the one who started the altercation.  Wright was unavailable at trial. Accordingly, the defense filed a motion in limine requesting that the trial court admit Wright's statements to the police in lieu of his live testimony.  Ex. 1 at 127-37.  The following is a summary,

taken from the court of appeal opinion, of Wright's statements to the police:

> Wright initially misled the police about the location of the incident, but later took them to the homeless camp. He also lied and told them that he and Ruby were "jumped by a couple of white dudes." However, in his subsequent statement to Officer O'Neil, Wright stated that Ruby asked him to accompany him to the homeless camp to "'watch his back' while he went to speak with a guy he (Ruby) had a disagreement with." When they arrived, Ruby and defendant began to argue and fight. Wright tried to assist Ruby, and defendant bit Wright on the cheek. When Sheldahl tried to pull Ruby off defendant, Ruby hit her in the face with his cane. After defendant stabbed Ruby several times, Wright pulled out his own knife to scare defendant and stop his attack on Ruby. Wright also told Officer O'Neil that "he believed that Ruby was the aggressor and went to [defendant's] camp to start a fight." Ruby did not use his cane against defendant.

> Several months later, the police interviewed Wright again. He stated that when Ruby and he arrived at the camp, Ruby "began 'tearing up the camp' by pulling the tents down and throwing objects around the campsite." Ruby was yelling, "'Where are you? I know you're in here somewhere.'" When Wright asked him why he was destroying the camp, Ruby ignored him. Wright also told the police that he did not see Ruby hit Sheldahl and that Sheldahl told him that Ruby had done so.

People v. Brentlinger, 2008 WL 5207561 at *3.

The trial court denied Petitioner's motion in limine, finding that Wright's statement was "absolutely and inherently unreliable." Ex. 2 at 30. Specifically, the court noted that there was no way to determine Wright's motive for changing his statements. Id. at 35. Petitioner argues that Chambers v. Mississippi, 410 U.S. 284 (1973), demanded that the statement be admitted as an exculpatory statement against penal interest.

16

A.   State Appellate Court Opinion Addressing Petitioner's Claim

The state appellate court distinguished the Supreme Court's opinion in <u>Chambers</u>, finding the probative value of Wright's statement much weaker than that of the witness in <u>Chambers</u>.  <u>People v. Brentlinger</u>, 2008 WL 5207561 at *4.  Specifically, in <u>Chambers</u>, the defendant was charged with murder, and the witness whose statement the defendant sought to admit had previously signed a sworn confession stating that he--not the defendant--was the one who committed the murder.  <u>Chambers</u>, 410 U.S. at 294.  Here, in contrast, the court of appeal found that Wright never incriminated himself and that it was not clear from Wright's statement how the fight actually began.  <u>People v. Brentlinger</u>, 2008 WL 5207561 at *5.

The state appellate court also rejected Petitioner's claim that Wright made a statement against his own penal interest when he admitted that Ruby had asked Wright to accompany Ruby "to watch [Ruby's] back."  <u>Id.</u>  The court found that this at most indicated that Ruby was concerned that someone might attack him and did not show that Wright went to the camp with the intent of initiating an attack.  <u>Id.</u>  Accordingly, Wright's statement lacked the assurances of reliability found in <u>Chambers</u> that would justify an exception to the state's rules against using hearsay evidence.  <u>Id.</u>

B.   Analysis of Petitioner's Claim Under AEDPA

Due process may be violated when excluded hearsay testimony bears "persuasive assurances of trustworthiness" and is "critical" to the defense.  <u>Chambers</u>, 410 U.S. at 302;  <u>see also</u> <u>Chia v. Cambra</u>, 360 F.3d 997, 1003 (9th Cir. 2004).  "State and federal

17

United States District Court
For the Northern District of California

rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence). Such latitude is limited, however, by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. See Holmes, 547 U.S. at 324.

In deciding whether the exclusion of evidence violates the due process right to a fair trial or the right to present a defense, the court balances the following five factors: (1) the probative value of the excluded evidence on the central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the attempted defense. Chia, 360 F.3d at 1004 (9th Cir. 2004) (citing Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)). The court also must give due weight to the state interests underlying the state evidentiary rules on which the exclusion was based. See Chia, 360 F.3d at 1006; Miller, 757 F.2d at 995.

Under the applicable Miller factors, the exclusion of Wright's statement did not violate Petitioner's due process rights. The fourth factor arguably weighs in favor of Petitioner because Wright was one of the only witnesses to the incident. The fifth factor also arguably weighs in favor of Petitioner because Wright's statement would have a been a major part of Petitioner's defense

18

United States District Court
For the Northern District of California

that Ruby initiated the assault.  On the other hand, Petitioner
propounded several other defense theories at trial, including
defense of others and third-party culpability, as discussed
elsewhere in this order.  In any event, these two factors are
outweighed by the remaining three factors.  The first factor--
probative value--weighs against Petitioner because, as the court of
appeal noted, it was not clear from Wright's statement how the
fight actually began.  Thus Wright's statement would not have gone
far to impeach Ruby.  The second factor--reliability--weighs
against Petitioner because, as the trial court noted, Wright had
lied to the police, and there was no way to determine his motive
for doing so.  The fact that the excluded evidence was hearsay also
made it unreliable.  The third factor--whether the statement is
capable of evaluation by the trier of fact--weighs against
Petitioner because, although the investigating officers took notes
from the interviews, the jury cannot evaluate notes of someone
else's comments as effectively as it could have evaluated in-person
testimony or even a transcript, and the state would have no
opportunity to challenge the statements on cross-examination.
Therefore, according the state court's determination the high
degree of deference to which it is entitled under the AEDPA,
exclusion of Wright's statement was not a violation of due process.
See Chia, 360 F.3d at 1004.

    Further, in order to obtain habeas relief on the basis of an
evidentiary error, Petitioner must show that the error was one of
constitutional dimension *and* that it was not harmless under Brecht
v. Abrahamson, 507 U.S. 619 (1993).  Specifically, he would have to
show that the error had "'a substantial and injurious effect' on

the verdict." Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir.
2001) (quoting Brecht, 507 U.S. at 623). Here, however, as
discussed above, the statement was internally inconsistent and
lacked substantial exculpatory value because Wright never
explicitly said that Ruby initiated the attack. Indeed, parts of
the statement clearly inculpated Petitioner in Ruby's stabbing.
Accordingly, any error was harmless.

Based on the above, the state court's denial of this claim was
not contrary to, or an unreasonable application of, established
federal authority.

V.    Admissibility of Ruby's Past Conduct

Petitioner claims that the trial court erred in excluding
evidence of two incidents of Ruby's past violent conduct.
Specifically, at trial, the defense sought to introduce evidence of
three instances of prior assaultive behavior committed by Ruby
while intoxicated. Ex. 2 at 37-38. The defense sought to
introduce the evidence under Cal. Evidence Code § 1103 to prove
conduct in conformity with past behavior, specifically that Ruby
becomes violent when he is intoxicated. Id. The three instances
were summarized by the court of appeal as follows:

> In the first incident, Ruby was under the
> influence of alcohol and several prescription
> drugs when he "called [ ] out" Zuniga for a
> fight. In the next incident, Ruby punched out
> a car window while he was intoxicated. In the
> third incident, the police responded to a
> domestic disturbance call. Ruby, who was
> intoxicated, waved his arms around when the
> police tried to subdue him. After the police
> pushed him to a prone position, he continued to
> be uncooperative. He was then placed into
> custody for resisting arrest and being drunk in
> public.

United States District Court
For the Northern District of California

People v. Brentlinger, 2008 WL 5207561 at *6.

The trial court allowed the defense to introduce evidence of the first incident--the one involving Ruby and Zuniga--but excluded the other two incidents. Ex. 2 at 41. The trial court reasoned that the act of vandalism "in no way demonstrates a willingness to engage in physical violence towards another human being," and the incident involving the police "suggests a withdrawal from restraint and physical violence. There's no indication he swung at the officer, kicked at an officer or in any way engaged in an act of physical aggression, which is the issue in this case." Id.

A.   State Appellate Court Opinion Addressing Petitioner's Claim

The court of appeal affirmed the trial court's ruling on the grounds that neither of the excluded incidents was probative on the issue of who initiated physical violence in the assault. People v. Brentlinger, 2008 WL 5207561 at *6. Specifically, the court found that the first excluded incident involved property damage--not physical violence against another person. Id. In the second excluded incident, involving the police, Ruby was not shown to have threatened or initiated an attack on the officers. Id. Rather, his resistance was a response to police attempts to subdue him. Id.

B.   Analysis of Petitioner's Claim Under AEDPA

Applying the Miller factors discussed above, the state court was not unreasonable in concluding that the exclusion of the two prior incidents did not violate Petitioner's due process rights. See Miller, 757 F.2d at 994. The first factor cuts against

21

Petitioner because, as noted by the appellate court, the two prior incidents were not probative on the issue of whether Ruby had a propensity to initiate violent assaults on others.  The evidence, therefore, did not bear on the identity of the aggressor in the fight between Petitioner and Ruby.  The second and third factors-- the reliability of the evidence and whether it was capable of ready evaluation by the jury--likely weigh in favor of Petitioner. Though it is not clear how the defense sought to introduce the evidence and there is no indication that Ruby would have conceded the alleged episodes, it does appear that Ruby had suffered criminal charges--and possibly convictions--for these incidents. See Ex. 2 at 37-40 (referring to Ruby's actions as "misdemeanor vandalism" and a "148(A)").  Accordingly, the acts presumably could have been shown in a quick and direct evidentiary presentation. The fourth factor weighs against Petitioner because the excluded evidence was not the sole evidence on the issue of who initiated the attack.  Ruby testified at trial and was subject to cross-examination.  Ex. 2 at 97-123, 156-78.  Further, the issue of Ruby's alcohol and drug use in general were explored at trial.  Id. at 65-66, 113-15, 122-23, 158-61, 168-71, 181.  Moreover, as noted above, Petitioner was permitted to present evidence on the Zuniga incident.  Id. at 166-71.  The fifth factor weighs against Petitioner because, as discussed above, the defense theory that Ruby initiated the assault was only one of several defense theories.  Further, Petitioner was able to advance the theory that Ruby had a propensity toward initiating violent conduct when intoxicated because the trial court specifically allowed evidence of the Zuniga incident.  The Court cannot definitively say that the

22

**United States District Court**
For the Northern District of California

two excluded incidents were a "major part" of the attempted

defense.   According the state court's determination the high degree

of deference to which it is entitled under the AEDPA, exclusion of

the two prior incidents of Ruby's conduct was not a violation of

due process.   See <u>Chia</u>, 360 F.3d at 1004.

Based on the above, the state court's denial of this claim was

not contrary to, or an unreasonable application of, established

federal authority.

VI.   Defense of Others Instruction (CALCRIM No. 3470)

Petitioner claims that the trial court erred in failing to <u>sua</u>

<u>sponte</u> instruct the jury on defense of others.   Again, while the

amended petition does not state the basis for the proposed

instruction, a review of Petitioner's briefing to the state court

of appeal and of the court of appeal's opinion reveals that

Petitioner sought to argue that any assault was committed in his

defense of his girlfriend, Sheldahl.   See <u>People v. Brentlinger</u>,

2008 WL 5207561 at *11-12.

A.   State Appellate Court Opinion Addressing Petitioner's
     Claim

In rejecting this claim, the state appellate court found there

was insufficient evidence to merit a defense of others instruction.

<u>People v. Brentlinger</u>, 2008 WL 5207561 at *12.   Specifically, the

court found that the evidence showed that Sheldahl became involved

in the assault only after Petitioner attacked Ruby.   <u>Id.</u>   Because

Ruby did not instigate an attack on Sheldahl, there was no evidence

that Petitioner acted in her defense.   <u>Id.</u>

The appellate court also noted that defense counsel's argument

focused on the self-defense theory and on reasonable doubt.   <u>Id.</u>

23

United States District Court
For the Northern District of California

While defense counsel made one passing reference to protecting Sheldahl, this was not enough to indicate that the defense was relying on a "defense of others" theory.  Id.

B.  Analysis of Petitioner's Claim Under AEDPA

As noted above, due process does not require that an instruction be given unless the evidence supports it.  See Hopper v. Evans, 456 U.S. 605, 611 (1982); Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir. 2005).  A "mere scintilla" of evidence supporting the defendant's theory is not sufficient to warrant a defense instruction.  United States v. Morton, 999 F.2d 435, 437 (9th Cir. 1993) (citing United States v. Jackson, 726 F.2d 1466, 1468 (9th Cir. 1984)).

After a thorough review of the record, the Court finds no evidence that Ruby initiated an attack on Sheldahl against which Petitioner defended.  As found by the state appellate court, the evidence showed that Sheldahl jumped on Ruby only after Petitioner attacked Ruby.  Ex. 2 at 90-91, 176-77.  Petitioner does not meet his "heavy burden" to show that the trial court's failure to instruct on defense of others deprived him of the fair trial guaranteed by due process.  See Villafuerte, 111 F.3d at 624.

The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, federal law.

VII.  Admissibility of Ruby's Testimony Regarding Petitioner's
      Girlfriend

Petitioner claims that the trial court erred in refusing to strike certain of Ruby's testimony regarding Petitioner's

girlfriend, Sheldahl. Specifically, the following colloquy took place during defense counsel's cross-examination of Ruby at trial:

> Q. Is this the woman you know as Laurie Sheldahl? [¶] A. Yes. [¶] Q. And is this the woman you know as [defendant's] girlfriend? [¶] A. She was everybody's girlfriend. [¶] Q. Is that what you wanted to tell me about her? [¶] A. No. [¶] Q. When you say she was everybody's girlfriend, you mentioned earlier on direct examination that Laurie Sheldahl was [defendant's] girlfriend or so-called girlfriend. What did you mean by that? [¶] A. I meant that he was very jealous of anybody else talking to her and that he would always keep her in a tent because he was always beating her up. [¶] [DEFENSE COUNSEL]: Your Honor, I'm going to object, move to strike. May we approach? [¶] THE COURT: All right. [¶] (A sidebar conference was held out of the hearing of the jury as follows:) [¶] [DEFENSE COUNSEL]: There has been no evidence of this ever before. This just comes out of the blue. I'm going-[¶] THE COURT: What's your objection? I need a legal ground. [¶] [DEFENSE COUNSEL]: Lack of foundation, 352. [¶] THE COURT: Well, the problem is you asked him what he meant when he said so-called girlfriend. He's explaining it to you, counsel. [¶] [DEFENSE COUNSEL]: But he can't just explain she is with a lot of different guys. [¶] THE COURT: That's not what he is saying. He called her that because he kept her in the tent and beat her up a lot. That's his explanation. [¶] You needed to ask the why question. What do you mean question, you are stuck with the answer. [¶] [DEFENSE COUNSEL]: Okay.

Ex. 2 at 101-02. Petitioner argues that this testimony was so prejudicial that its admission amounted to a due process violation.

A. State Appellate Court Opinion Addressing Petitioner's Claim

On direct review, the appellate court applied California law to find that defense counsel's failure to object timely at trial forfeited the claim on appeal. People v. Brentlinger, 2008 WL

United States District Court
For the Northern District of California

5207561 at *15.  Specifically, defense counsel stated that he was objecting to Ruby's testimony that "[Sheldahl] was everybody's girlfriend."  Accordingly, defense counsel's failure to object to Ruby's testimony about Petitioner beating Sheldahl and keeping her in a tent was effectively waived.  Id.

The appellate court also applied California law to find that Petitioner could not complain of testimony that he himself had elicited at trial.  Id.  Specifically, the court stated that "[a] defendant cannot complain of the admissibility of evidence that he or she introduced through the examination of a witness."  Id. (citing People v. Tennyson, 127 Cal. App. 2d 243, 246 (1954)).

B.  Analysis of Petitioner's Claim Under AEDPA

In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  See Coleman v. Thompson, 501 U.S. 722, 749-50 (1991).  The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming the denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial, see Inthavong v. Lamarque, 420 F.3d 1055, 1058 (9th Cir. 2005), and also where, as here, the petitioner raised only an evidentiary, not a constitutional objection, at trial.  See Davis v. Woodford, 384 F.3d 628, 653-54 (9th Cir. 2004).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Because Petitioner has not shown cause and prejudice or a miscarriage of justice, <u>Coleman</u>, 501 U.S. at 749-50, this claim is barred.   To the extent Petitioner claims ineffective assistance of counsel for counsel's failure to object or for counsel's act of eliciting the challenged testimony, such claim is addressed in section IX below.

VIII.   Ineffective Assistance of Counsel – Failure to Object to Alleged Prosecutorial Misconduct

Petitioner claims that he was deprived of the effective assistance of counsel because trial counsel failed to object to two instances of alleged prosecutorial misconduct.  The first allegedly improper statement, made by the prosecution in closing argument, was as follows:

> What would [a] reasonable person think they had to do to protect themselves against Samuel Ruby.  The same Samuel Ruby you saw labor or walk into court.  [¶] 57 years old, maybe 56 at the time, height and weight, physical condition as you observed and heard about, what would they have had to do?  What would they think is reasonable?  This is all very difficult to translate when we don't know what is being thought of.  What we have here is the testimony of Mr. Ruby about what happened.

Ex. 2 at 274.

The second allegedly improper statement, made by the prosecutor in rebuttal, was as follows:

> I said I was desperate to hear the reasonable interpretation of the evidence that the defendant was going to advance that would suggest innocence.  In the end, what we were told, I actually wrote it down, that there is circumstantial evidence of a reasonable doubt. [¶] Well, no.  That's not what the law says. The law says you have to have circumstantial

27

1
2
3
4
5
6
7

> evidence of a reasonable interpretation of
> facts pointing to innocence.  So the next step
> of course is, okay, ladies and gentlemen, here
> are the facts that point to him.  I challenged
> him to do it and he didn't do it.  What does
> that tell you?  [¶] If the defense cannot
> articulate the facts that are the basis of his
> reasonable interpretation for innocence, or
> facts--even a reasonable interpretation of
> anyone else, just said a reasonable
> interpretation of circumstantial evidence of
> reasonable doubt, they don't exist.

8   Ex. 2 at 310-11.

9   Petitioner claims that the first statement, specifically, the

10  prosecutor's statement that "we don't know what is being thought

11  of," was an impermissible comment on his right not to testify, in

12  violation of Griffin v. California, 380 U.S. 609 (1965).  Regarding

13  the second statement, Petitioner claims that the prosecutor

14  improperly shifted the burden of proof and the presumption of

15  innocence to him by arguing that the defense had to articulate

16  facts pointing to a reasonable interpretation of innocence.

17  Because defense counsel failed to object to these statements,

18  Petitioner argues that he received ineffective assistance of

19  counsel.

20
21      A.  State Appellate Court Opinion Addressing Petitioner's
           Claim

22  Applying the federal standard set forth in Strickland v.

23  Washington, 466 U.S. 668 (1984), which is discussed below, the

24  state appellate court rejected Petitioner's claim.  Regarding the

25  first statement, the court found that, taken in context of the

26  self-defense instruction, the prosecution was emphasizing that the

27  jury could not presume what Petitioner was thinking but rather, was

28

United States District Court
For the Northern District of California

1   required to consider what a reasonable person would have done.

2   People v. Brentlinger, 2008 WL 5207561 at *17.

3       Regarding the second statement, the appellate court agreed

4   that the prosecution committed misconduct by suggesting that

5   Petitioner was required to produce evidence pointing to innocence.

6   Id. at *18.  Such a comment improperly shifted the burden of proof

7   to the defense.  Id.  Thus, the court agreed, trial counsel

8   rendered ineffective assistance when he failed to object.  Id.  The

9   court nonetheless rejected Petitioner's claim, finding that

10  counsel's error did not prejudice Petitioner at trial.  Id.

11  Specifically, the trial court correctly instructed the jury on the

12  presumption of innocence and further instructed the jury that, if

13  an attorney's comments conflicted with the trial court's

14  instruction, the jury was required to follow the latter.  Id.  The

15  appellate court pointed to other presumably curative instructions

16  addressing the prosecution's burden of proof in concluding that

17  there was no prejudice to Petitioner.  Id.

18      B.   Analysis of Petitioner's Claim Under AEDPA

19

20      The Sixth Amendment guarantees the right to effective

21  assistance of counsel.  Strickland, 466 U.S. at 684-86.  To prevail

22  on a claim of ineffective assistance of counsel, Petitioner must

23  show that counsel's performance was deficient and that the

24  deficient performance prejudiced Petitioner's defense.  Id. at 688,

25  692.  To prove deficient performance, Petitioner must demonstrate

26  that counsel's representation fell below an objective standard of

27  reasonableness under prevailing professional norms.  Id. at 688.

28  To prove counsel's performance was prejudicial, Petitioner must

29

**United States District Court**
For the Northern District of California

1    demonstrate a "reasonable probability that, but for counsel's

2    unprofessional errors, the result of the proceeding would have been

3    different.  A reasonable probability is a probability sufficient to

4    undermine confidence in the outcome."  <u>Id.</u> at 694.

5         Regarding the first statement, Petitioner's counsel may have

6    reasonably chosen not to object, and chosen not to seek a curative

7    instruction, for the tactical reason of not calling further

8    attention to the comments.  Further, the appellate court was not

9    unreasonable in finding that the statement was not improper.  Here,

10   by referring to the lack of evidence, the prosecution was not

11   necessarily suggesting that guilt should be inferred from

12   Petitioner's failure to testify.  Taken in context, the prosecution

13   was referring to the lack of evidence to show that a reasonable

14   person would have believed he needed to stab an older, physically

15   challenged man in order to defend himself.  <u>See</u> <u>Cook v. Schriro</u>,

16   538 F.3d 1000, 1020 (9th Cir. 2008) ("Prosecutors may comment on

17   the failure of the defense to produce evidence to support an

18   affirmative defense so long as it does not directly comment on the

19   defendant's failure to testify.").  In short, the record does not

20   show prosecutorial misconduct, and defense counsel was not

21   deficient for failing to object.

22        Regarding the second statement, accepting as correct the

23   appellate court's determination that counsel erred in failing to

24   object, the state court was not unreasonable in finding that there

25   was no resulting prejudice to Petitioner.  Specifically, the trial

26   court directed the jurors to the legal standards they were charged

27   with applying to the case.  The trial court instructed the jury

28   that it must follow the law as explained by the court, and that if

United States District Court
For the Northern District of California

the attorneys' comments conflicted with the trial court's instructions, the jury was required to follow the latter.  Ex. 1 at 182.   The trial court then correctly instructed the jury on the presumption of innocence and the People's burden of proof in general.   Id. at 183.   The jury was also specifically instructed: "Before you may rely on circumstantial evidence to conclude that a fact necessary to find the defendant guilty has been proved, you must be convinced that the People have proved each fact essential to that conclusion beyond a reasonable doubt."   Id. at 185. Moreover, the jury was instructed that the People had "the burden of proving beyond a reasonable doubt that defendant did not act in lawful self-defense."   Id. at 193.

    The Court concludes that, considered as a whole, the jury instructions were adequate to correct the improper comment made by the prosecution in rebuttal.   Tan v. Runnels, 413 F.3d 1101, 1115 (9th Cir. 2005) ("we presume jurors follow the court's instructions absent extraordinary situations"); Boyde v. California, 494 U.S. 370, 384 (1989) (Arguments of counsel "generally carry less weight with a jury than do instructions from the court.").   Accordingly, Petitioner has not demonstrated a reasonable probability that the result of the proceeding would have been different had counsel challenged the second statement.   The state court's rejection of this claim was neither contrary to, nor an unreasonable application of, federal law.

United States District Court
For the Northern District of California

IX.   Ineffective Assistance of Counsel – Failure to Object to
      Ruby's Testimony Regarding Sheldahl

     Petitioner claims that trial counsel rendered ineffective
assistance by failing to object to certain portions of Ruby's
testimony regarding Petitioner's girlfriend, Sheldahl.  As
discussed above at section VII, during the cross-examination of
Ruby, defense counsel asked Ruby what he meant when he referred to
Sheldahl as Petitioner's "so-called girlfriend."  When defense
counsel objected to the answer for lack of foundation and undue
prejudice, the trial court overruled the objection.  Ex. 2 at 101-
02.  Petitioner claims that defense counsel erred by failing to
federalize the objection.  Petitioner does not specify what federal
grounds counsel should have raised at trial.  A review of
Petitioner's opening brief on appeal, however, refers to the
elicited testimony as a "violation of the Confrontation Clause."
Ex. 3 at 63.

     A.   State Appellate Court Opinion Addressing Petitioner's
          Claim

     This specific claim was not raised on direct appeal.  The
appellate court did, however, address a very similar claim that
defense counsel rendered ineffective assistance in eliciting Ruby's
testimony about Petitioner's conduct toward Sheldahl in the first
place.  People v. Brentlinger, 2008 WL 5207561 at *15.  The
appellate court, applying the Strickland standard, found that
defense counsel did err in this line of questioning.  Id.
Specifically, Ruby had already earlier identified Sheldahl as
Petitioner's girlfriend, obviating any need for further
clarification as to her identity.  Id.  Further, because the

32

adjective "so-called" is pejorative, "there could have been no helpful or benign answer to the question of why Ruby referred to Sheldahl as [Petitioner's] 'so-called' girlfriend." <u>Id.</u>  Based on this analysis, the appellate court concluded that "[a] reasonably competent attorney would not have asked Ruby to explain himself." <u>Id.</u>

The court nonetheless rejected Petitioner's ineffective assistance of counsel claim on the grounds that Petitioner failed to establish prejudice as required under <u>Strickland's</u> second prong. <u>Id.</u>  Specifically, the court found that the uncontradicted evidence of Petitioner's guilt introduced at trial made it not reasonably probable that the absence of Ruby's prejudicial testimony would have resulted in a more favorable verdict.  <u>Id.</u>

B.   Analysis of Petitioner's Claim Under AEDPA

Turning to the claim raised here, the Court finds that Petitioner has failed to establish ineffective assistance of counsel for failure to federalize his objection.  The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to "be confronted with witnesses against him." U.S. Const. amend. VI.  Here, Petitioner had the opportunity to cross-examine Ruby on these statements and did so.  Accordingly, he had the opportunity afforded by the Confrontation Clause to show that the witness was biased as well as to show that testimony was exaggerated or otherwise unbelievable.  Accordingly, there was no Confrontation Clause violation, and a reasonably competent attorney would not have made the futile argument that there was one.

**United States District Court**
For the Northern District of California

Moreover, to the extent Petitioner claims ineffective assistance of counsel for eliciting this testimony or for failing to object to certain parts of this testimony, the appellate court reasonably found that Petitioner failed to show prejudice.  As found by the appellate court, the evidence adduced at trial was uncontradicted that Petitioner instigated the attack by breaking Ruby's cane, pushing him and then punching him in the chest and ribs.  Ex. 2 at 89-90, 119, 158, 198.  Further, Petitioner was the only person who touched Ruby in the areas where he was stabbed. Id. at 89-93, 119, 176-78.  Ruby first realized he had been stabbed after he and Petitioner physically separated.  Id. at 93, 165. Petitioner was found by police with blood covering his abdomen. Id. at 62, 135.  Petitioner had two prior felony convictions for assault with a deadly weapon and one prior conviction for battery with serious bodily injury.  Id. at 240-41, 249-50.  In light of the overwhelming evidence of guilt, Petitioner cannot show that the result of trial would have been more favorable absent Ruby's testimony about Sheldahl.

Accordingly, the state courts' decision denying relief on this claim was not contrary to, or an unreasonable application of, clearly established federal law.

X.   Ineffective Assistance of Counsel – Failure to Request
     Conformity Instruction

Petitioner claims that trial counsel rendered ineffective assistance by: (1) requesting CALCRIM 3470 because it "imputed to Petitioner knowledge of the victim's prior bad act"; and (2) failing to request an instruction that would have allowed the

jury to consider evidence of Ruby's prior violent act as conformity evidence.  As discussed in section I above, CALCRIM 3470 did not include a knowledge requirement.  Accordingly, the claim based on the first alleged error lacks merit, and the Court need only address the second alleged error.  While Petitioner does not specify what kind of instruction he sought, the appellate court opinion described the proposed instruction as follows:

> Evidence was received of the violent character of the complaining witness. [¶] The purpose of such evidence is to show that it is probable that a person of such character acted in conformity with that character trait during the events constituting this case. [¶] Any conflict in evidence of the complaining witness's character and the weight to be given to such evidence is for you to determine.

People v. Brentlinger, 2008 WL 5207561 at *9.

A.   State Appellate Court Opinion Addressing Petitioner's Claim

The state appellate court rejected Petitioner's claim, finding that defense counsel could have reasonably concluded that such instruction was unnecessary.  People v. Brentlinger, 2008 WL 5207561 at *10.  Specifically, the instruction that the complaining witness acted in conformity with his violent character was already covered by CALCRIM 3470 to the extent CALCRIM 3470 permitted the jury to consider Ruby's past threats and acts in deciding the reasonableness of Petitioner's beliefs and conduct.  Id. Similarly, other parts of the proposed instruction were merely introductory or covered by other instructions.  Id.

B.   Analysis of Petitioner's Claim Under AEDPA

The state appellate court found that there was a reasonable explanation for counsel's failure to request the instruction.  As

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

noted above in section I, CALCRIM 3470 benefitted Petitioner by allowing the jurors to infer that Ruby acted aggressively with Petitioner based on Ruby's past conduct, regardless of whether Petitioner knew of that conduct.  Further, as noted by the appellate court, defense counsel used CALCRIM 3470 to argue that Ruby had "already demonstrated the character for aggression and asking other people to fight," and that he had "a character and history of being violent and assaultive."  Ex. 2 at 286, 290-91. In short, counsel was not deficient for failing to request Petitioner's proposed conformity instruction.  See Strickland, 466 U.S. at 688.  Moreover, because CALCRIM 3470 already permitted a conformity inference, it simply cannot be said that there was a reasonable probability that, but for counsel's failure to request such an instruction, the result of the proceeding would have been different.  See id. at 694.

     The state court's denial of this claim of ineffective assistance of counsel was not contrary to, or an unreasonable application of, established Supreme Court authority.

XI.  Cumulative Error

     Petitioner claims that the cumulative effect of the errors at his trial denied him of his constitutional rights.

     In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  See Alcala v. Woodford, 334 F.3d 862, 893-95 (9th Cir. 2003).  However, where there is no single constitutional error existing, nothing can accumulate to the level of a

constitutional violation.  <u>See</u> <u>Mancuso v. Olivarez</u>, 292 F.3d 939, 957 (9th Cir. 2002).

Because this Court finds that, based on its assessment of Petitioner's claims, no single constitutional error exists, Petitioner is not entitled to federal habeas relief on his claim of cumulative error.

PETITIONER'S REQUEST FOR COUNSEL

Petitioner has also filed a letter with this Court requesting appointment of an attorney.  Docket no. 18.

The Sixth Amendment right to counsel does not apply in habeas corpus actions.  <u>See</u> <u>Knaubert v. Goldsmith</u>, 791 F.2d 722, 728 (9th Cir. 1986).  Title 18 U.S.C. § 3006A(a)(2)(B), however, authorizes a district court to appoint counsel to represent a habeas petitioner whenever "the court determines that the interests of justice so require" and such person is financially unable to obtain representation.  The decision to appoint counsel is within the discretion of the district court.  <u>See</u> <u>Chaney v. Lewis</u>, 801 F.2d 1191, 1196 (9th Cir. 1986); <u>Knaubert</u>, 791 F.2d at 728; <u>Bashor v. Risley</u>, 730 F.2d 1228, 1234 (9th Cir. 1984).  The courts have made appointment of counsel the exception rather than the rule by limiting it to: (1) capital cases; (2) cases that turn on substantial and complex procedural, legal or mixed legal and factual questions; (3) cases involving uneducated or mentally or physically impaired petitioners; (4) cases likely to require the assistance of experts either in framing or in trying the claims; (5) cases in which the petitioner is in no position to investigate crucial facts; and (6) factually complex cases.  <u>See generally</u> 1 J.

37

United States District Court
For the Northern District of California

1  Liebman & R. Hertz, <u>Federal Habeas Corpus Practice and Procedure</u>

2  § 12.3b at 383-86 (2d ed. 1994).  Appointment is mandatory only

3  when the circumstances of a particular case indicate that appointed

4  counsel is necessary to prevent due process violations.  <u>See</u>

5  <u>Chaney</u>, 801 F.2d at 1196; <u>Eskridge v. Rhay</u>, 345 F.2d 778, 782 (9th

6  Cir. 1965).

7       The Court finds that appointment of counsel is not warranted

8  in this case.  Petitioner's claims are typical claims that arise in

9  criminal appeals and are not especially complex.  This is not an

10 exceptional case that would warrant representation on federal

11 habeas review.  Further, no evidentiary hearing is required under

12 28 U.S.C. § 2254(e).  Petitioner's claims do not rely upon extra-

13 record evidence and a factual basis exists in the record to

14 determine the claims.

15      Accordingly, Petitioner's motion for appointment of counsel is

16 DENIED.

17                          CONCLUSION

18      For the foregoing reasons, the Petition for a Writ of Habeas

19 corpus is DENIED.  Petitioner's request for appointment of counsel

20 is also DENIED.

21      Further, a Certificate of Appealability is DENIED.  <u>See</u> Rule

22 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has

23 not made "a substantial showing of the denial of a constitutional

24 right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated

25 that "reasonable jurists would find the district court's assessment

26 of the constitutional claims debatable or wrong."  <u>Slack v.</u>

27 <u>McDaniel</u>, 529 U.S. 473, 484 (2000).  Petitioner may not appeal this

28 Court's denial of a Certificate of Appealability but may seek a

certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.


IT IS SO ORDERED.

Dated: 6/23/2011

CLAUDIA WILKEN
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

39

1

2

3

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

4

DAVID BRENTLINGER,

5

Plaintiff,

6

v.

7

JAMES WALKER et al,

8

Defendant.

_____/

9

Case Number: CV09-02635 CW

**CERTIFICATE OF SERVICE**

10

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District
Court, Northern District of California.

11

12

13

That on June 23, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said
copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said
envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located
in the Clerk's office.

14

15

16

17

David L. Brentlinger F-62982
T-138
California Medical Facility
P.O. Box 2500
Vacaville, CA 95696-2500

18

Dated: June 23, 2011

19

Richard W. Wieking, Clerk
By: Nikki Riley, Deputy Clerk

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

40